# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **LOADMAN GROUP, L.L.C., et al.,** | ) | **CASE NO. 4:10cv1759** |
| | ) | |
| | ) | |
| **PLAINTIFFS,** | ) | |
| | ) | |
| | ) | **JUDGE SARA LIOI** |
| **vs.** | ) | |
| | ) | |
| | ) | **MEMORANDUM OPINION** |
| **BANCO POPULAR NORTH AMERICA,** | ) | **AND ORDER** |
| | ) | **(Resolving Doc. Nos. 52 and 53)** |
| | ) | |
| **DEFENDANT.** | ) | |

Before the Court are defendant's motions to strike the affidavit of Eric Loadman and the affidavit and supplemental affidavit of Frank Coco (Doc. Nos. 52 and 53), plaintiffs' opposition thereto (Doc. No. 58), and defendant's reply (Doc. No. 60). For the reasons discussed below, the Court construes defendant's motions to strike as evidentiary objections pursuant to Fed. R. Civ. P. 56(c)(2)[1] and the same are **SUSTAINED in part**.[2]

## I. RELEVANT PROCEDURAL OVERVIEW

A full recitation of the procedural history and factual background may be found in the Court's Memorandum Opinion and Order (Doc. No. 65) filed contemporaneously with this

---

[1] A "motion to strike" applies only to pleadings. Fed. R. Civ. P. 12(f). A motion to strike is technically not available for motions for summary judgment and the attachments thereto. *See Adams v. Valega's Prof. Home Cleaning, Inc.*, No. 1:12CV0644, 2012 WL 5386028, at *2 (N.D. Ohio Nov. 2, 2012) (collecting cases) (citing 5C Wright & Miller, Federal Practice and Procedure § 1380). Rule 56(c)(4) of the Federal Rules of Civil Procedure sets the standards by which affidavits in support of summary judgment are governed. Accordingly, the Court construes defendant's motions to strike as Rule 56 objections to the admissibility of the affidavits at issue.

[2] Plaintiffs also filed a motion for leave to correct the exhibit attached to Frank Coco's affidavit and to file a supplemental affidavit authenticating, clarifying, and explaining that correction. (Doc. No. 46.) That motion is **GRANTED**, but for the reasons discussed *infra*, many of Coco's statements therein do not withstand defendant's objections and will be disregarded on summary judgment.

Memorandum Opinion and Order. For purposes of the Court's ruling herein on the motions to strike, and in order to prevent unnecessary repetition, the Court provides this very succinct procedural overview: On May 3, 2011, Loadman Group L.L.C. ("Loadman Group") and Eric J. Loadman ("Loadman")[3] filed an amended complaint against defendant Banco Popular North America ("defendant" or "Banco"), alleging claims for breach of oral and written contracts, breach of the duty of good faith and fair dealing, willful misconduct and intentional misrepresentation, intentional infliction of emotional distress, and negligent misrepresentation, all stemming from Banco's decision not to close on a Small Business Administration ("SBA") insured loan to Loadman and Loadman Group. (Doc. No. 19.)

On April 2, 2012, Banco moved for summary judgment as to all claims in the amended complaint. (Doc. No. 35.) In response to that motion, plaintiffs offered the affidavit testimony of Loadman and Coco (Doc. Nos. 45-4, 45-5 and 46-4), which plaintiffs maintain created genuine issues of material fact. Defendant moves to strike the affidavits, raising a myriad of evidentiary objections to the content therein. Defendant's objections to the affidavits must be resolved before the Court addresses the motion for summary judgment. Because the number of meritorious objections is so great, and the required analysis is so extensive, the Court has elected to rule on the objections in this separate Memorandum Opinion and Order.

## II.     APPLICABLE EVIDENTIARY CONSIDERATIONS UNDER RULE 56

In order to be considered by the Court on a motion for summary judgment, an affidavit must satisfy three formal requirements: (1) it "must be made on personal knowledge";

---

[3] On July 26, 2011, Loadman filed a Voluntary Petition for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia. On June 13, 2012, the bankruptcy court granted a motion by the bankruptcy trustee to employ plaintiffs' counsel in this action as special counsel to the trustee to pursue Loadman's claims pending before this Court. On July 3, 2012, this Court granted plaintiffs' unopposed motion to substitute Tamara Miles Ogier, Trustee ("Trustee"), as a party plaintiff in place of plaintiff Loadman.

(2) it must "set out facts that would be admissible in evidence"; and (3) it must "show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. Pro. 56(c)(4). Additionally, the party offering the affidavit must support the assertions made therein by "citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1)(A). Further, a party may not "'create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony.'" *Wright v. Baker*, 849 F. Supp. 569, 572 (N.D. Ohio 1994) (quoting *Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986)). Courts have also held "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement without explaining the contradiction or attempting to resolve the disparity." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006). In resolving defendant's objections to the affidavits offered in opposition to summary judgment, the Court must use "a scalpel, not a butcher knife, . . . striking portions of affidavits that do not satisfy the requirements of [Rule 56(c)(4)]." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 593 (6th Cir. 2009) (citation and internal quotation marks omitted) (holding district court abused its discretion by striking the entire affidavit, rather than striking only the inadmissible portions).[4] But some courts (outside the Sixth Circuit) have found entire affidavits inadmissible on the grounds that it would be all but impossible for the trial court to separate out the affidavit's admissible content from the inadmissible content. *See Hatch v. Boulder Town Council*, No. 07-4239, 2009 WL 82699, at *1 (10th Cir. Jan. 14, 2009)

---

[4] Although *Aerel* and *Upshaw* refer to striking portions of an affidavit that do not satisfy the requirements of Rule 56, as noted above, since the 2010 amendment to the Federal Rules, a motion to strike is technically not available for motions for summary judgment and the attachments thereto; rather, the presented evidence may simply be disregarded on summary judgment. *See Adams v. Valega's Prof. Home Cleaning, Inc.*, No. 1:12CV0644, 2012 WL 5386028, at *2 (N.D. Ohio Nov. 2, 2012) (collecting cases) (citing 5C Wright & Miller, Federal Practice and Procedure § 1380). Case law since the amendments uses the terms "strike" and "disregard" interchangeably.

(acknowledging general rule that courts disregard only portions of affidavit that are inadmissible, but noting exception that "entire affidavit may be disregarded if inadmissible matter is so interwoven or inextricably combined with the admissible portions that it is impossible, in the practical sense, to separate them.") (quoting *S. Concrete Co. v. United States Steel Corp.*, 394 F. Supp. 362, 380-81 (N.D. Ga. 1975), *aff'd,* 535 F.2d 313 (1976)) (internal quotation marks omitted); *Southard v. State Farm Fire & Cas. Co.*, No. 4:11-CV-243, 2013 WL 209224, at *10 (S.D. Ga. Jan. 17, 2013) (finding that inadmissible portions of summary judgment affidavit were so interwoven with the rest of the affidavit that the affidavit should be excluded in its entirety).

### III.    ANALYSIS OF DEFENDANT'S OBJECTIONS

When Loadman and Coco were deposed, they responded to questions about a multitude of events and issues, their responses to which often indicated a lack of any recall and/or specific details. Despite this testimony, and in an apparent attempt to create issues of material fact, Loadman and Coco are now able, in their affidavits, to recount with specific clarity and exceptional detail the very same events and conversations that they either could not recall or failed to mention during their depositions. For example, in their affidavits, unlike their deposition testimony:

- They related the same exact word-for-word conversation with Joe Wojtowicz ("Wojtowicz") and Matthew Putnam ("Putnam") of Banco, in which Wojtowicz and Putnam made certain assurances in exchange for Loadman's promise to give the exclusive right to make the loans. (Doc. No. 45-4 at 1475; Doc. No. 45-5 at 1493.) This purportedly led Loadman to withdraw his loan application with Community South Bank, losing a non-refundable fee of $15,000.00. (Doc. No. 45-5 at 1494.)

Additionally, although not testified to while being deposed, they averred in their affidavits that:

- Banco's in-house attorney, Kristina Rozek ("Rozek"), wrote to Loadman's attorney, Vincent Restauri ("Restauri"), and told him all that was needed to

resolve the environmental issues was execution of an indemnification agreement and a deposit in escrow for 150% of the cost of remediation as estimated by John Burkart ("Burkart"), an environmental expert from LandAmerica who worked with Allred Metal Stamping Works, Inc. ("Allred Metal"), a metal stamping business in North Carolina, on a remediation plan. (Doc. No. 45-4 at 1479; Doc. No. 45-5 at 1497.); and

- While Loadman was waiting for loan approval, Banco imposed additional requirements, including instructing Loadman and Allred Metal to phase out certain customers and to bring in new customers, resulting in declining revenues; directing him to quit his $120,000 a year job in Atlanta and to move to North Carolina; mandating he hire a plant manager subject to Banco's approval; and requiring him to create a North Carolina limited liability company. (Doc. No. 45-5 at 1500-01; Doc. No. 45-4 at 1483-84.)

These are but some of the newly recalled facts and details, which, curiously, the affiants did not mention during their depositions, notwithstanding numerous opportunities to do so in response to directly pertinent questions.

As discussed more fully below, the Court finds the affidavits of Loadman and Coco are replete with content that is not based on personal knowledge, lacks foundation, is speculative, is based on inadmissible hearsay and lay opinion testimony, and refers to documentary evidence not in the record. As well, several of Coco's and Loadman's sworn statements must be disregarded on summary judgment because those statements are inconsistent with and directly contradictory to the affiants' deposition testimony. In short, the affidavits contain so much inadmissible content that, once those portions are set aside, little remains, and what does remain is so interwoven and inextricably combined with the inadmissible content that the Court believes it is presented with the rare situation wherein all three affidavits should be disregarded in their entirety. Nonetheless, in an effort to perform the favored "scalpel" method, as set forth in the chart at the end of this opinion and in accordance with the evidentiary standards which follow, this Court has performed a line-by-line analysis of the affidavits (in

response to defendant's stated objections) to determine the admissibility of the individual statements contained therein.

## A. Personal Knowledge

Summary judgment affidavits must be based on personal knowledge. *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 495 (6th Cir. 2002); Fed. R. Civ. P. 56(c)(4). Affidavits based on mere "information and belief," as opposed to facts the affiant *knows* to be true, are not proper. *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 831 (1950), *overruled on other grounds by Lear, Inc. v. Adkins*, 395 U.S. 653 (1969). In order for inferences, thoughts, and opinions to be properly included in a Rule 56 affidavit, they must be premised on firsthand observations or personal experience, and established by specific facts. *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1355 n.2 (6th Cir. 1996); *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("[a]lthough 'personal knowledge' may include inferences and opinions, those inferences must be substantiated by specific facts"). "Mere suspicion or possibility[] . . . does not create an issue of fact." *Milne v. Mills*, 765 F.2d 145 (Table), 1985 WL 13294, at *1 (6th Cir. May 29, 1985) (citations omitted). Similarly, an affidavit must lay a foundation as to why the affiant is competent to testify to the matters stated therein. *Lewis v. Horace Mann Ins. Co.*, 410 F. Supp. 2d 640, 647 (N.D. Ohio 2005). Without a proper foundation, the affidavit may be disregarded. *Id.*

In this case, plaintiffs have provided two nearly identical affidavits, referring to the actions and mental states of third parties, but supplying no basis for the inferences, thoughts, and opinions offered, let alone specific facts supporting those assertions. For example, Coco fails to explain how he personally knows of or is competent to testify to: (1) Loadman's actions

*before he met him* or during the loan application process, or how Loadman was feeling; (2) Allred Metal's actions or how its owners were feeling about the deal; (3) the actions or inaction of Banco, its employees, or its in-house counsel, and the reasons for such actions or inaction; (4) the role of the Certified Development Company ("CDC"); and/or (5) what Burkart supposedly said to someone else.[5] Similarly, Loadman does not explain how he personally knows or is competent to testify to: (1) what actions Coco, Banco, or its agents did or did not take with regard to the environmental inspection or the loan process; (2) what the inspector or Allred Metal was doing or how the Allred Metal owners were feeling; or (3) the CDC's role.[6]

Incredibly, plaintiffs argue that all that matters here is that there is a genuine issue of material fact and, so long as *one* of the affiants has personal knowledge of Banco's actions, it does not matter if the *other* affiant swore under oath as to events of which he has no personal knowledge. In short, plaintiffs find it unnecessary to enlighten the Court as to which instances Coco *or* Loadman testifies to from personal knowledge and as to which the other does not, and asks the Court to presume one or the other *must* possess that knowledge. The Court is aware of no rule or controlling case law supporting such a presumption. Indeed, Rule 56(c)(4) requires "an affidavit" be made on the *affiant's* personal knowledge, not upon someone else's.

---

[5] Other examples demonstrating a lack of first hand, personal knowledge include: paragraph 7, within which Coco admits, "Eric tells me he did this. I did not myself see him do it."; paragraph 12, within which Coco acknowledges, "I did not actually see him do this but he told me he did."; the first sentence of paragraph 16, within which Coco asserts, "So, to the best of my knowledge, . . . ."; paragraph 20, wherein Coco states that he is aware of this fact "to the best of my knowledge . . . ."; the statement within paragraph 23 that "it appears Attorney Rozek provided [forms] to Attorney Restauri"; and paragraph 25, within which Coco states, "I think I learned from Mr. Wojtowicz, or maybe I read it in an email or some other document (I am not absolutely clear about how I learned it) . . . ."

[6] Other examples demonstrating a lack of personal knowledge include: Loadman's statement in paragraph 10 that Putnam nodded his head during a conversation in which Loadman participated *by telephone*; and Loadman's statement in paragraph 34 that Banco "to the best of his knowledge" did not ask anyone else if remediation could materially impact the business.

7

### B. Contradictory Testimony

"[W]hen deciding the admissibility of a post-deposition affidavit at the summary-judgment stage, the district court must first determine whether the affidavit 'directly contradicts' prior sworn testimony." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 593 (6th Cir. 2009) (citing *Aerel, S.R.L.*, 448 F.3d at 908). Absent a "persuasive justification for the contradiction," a directly contradictory affidavit should be disregarded. *See Aerel, S.R.L.*, 448 F.3d at 908. However, even an affidavit without a direct contradiction may be disregarded if the Court determines the affidavit "'constitutes an attempt to create a sham fact issue.'" *Id.* (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)); *but see Baer v. Chase*, 392 F.3d 609, 625 (3d Cir. 2004) (noting a so-called "sham" affidavit need not be disregarded if there is "independent evidence in the record to bolster [the] otherwise questionable affidavit"). To determine whether a party attempted to create a sham issue of material fact, the Sixth Circuit has approved the list of nonexhaustive factors outlined in *Franks, supra*. *See Aerel, S.R.L.*, 448 F.3d at 909-10. Relevant factors include: (1) whether the affiant was cross-examined during his earlier testimony; (2) the affiant's access to the pertinent evidence at the time of his earlier testimony; (3) whether the affidavit was based on newly discovered evidence; and (4) whether the earlier testimony reflects confusion, which the affidavit attempts to explain. *Franks*, 796 F.2d at 1237.

Here, although the affiants now quote or testify to three conversations,[7] Loadman testified during his deposition that he could only recall one such conversation, in April 2008. Further, when Loadman was asked during his deposition if he remembered specifically what

---

[7] Paragraphs 3 and 10 of each affidavit are identical, purporting to quote, at length and word for word, conversations that Loadman and Coco had with Wojtowicz and/or Putnam in 2007 and April 2008. The affiants mention a third conversation at paragraphs 40 and 41.

Wojtowicz and Putnam said during this conversation, he responded succinctly: "Specifically they said we are going to get this through and we are going to get it done in lightening [sic] speed because we have been messing around with this long enough." (Doc. No. 37 at 904-05.) Moreover, he testified he could not recall whether it was Wojtowicz or Putnam who made this statement. (*Id*. at 905.)

With remarkable clarity, however, in their post-deposition affidavits in opposition to the motion for summary judgment, Coco and Loadman now not only recall these conversations, but they *both* recall these conversations in the same exacting, word-for-word detail—as if the two have experienced a Vulcan mind-meld. When a witness claims a complete loss of memory during his deposition, but later describes significant details in his affidavit, courts often strike the affidavit as conflicting testimony. *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 459-60 (6th Cir. 1986) (striking plaintiff's affidavit statement that the Sears representative told her the "main reasons" Sears discharged its employees were falsification of time cards, excessive tardiness or absences, and theft, because, in her deposition, plaintiff only remembered the Sears representative telling her that she could be fired for punching someone else's time card); *Smith v. Consol. Rail Corp.*, No. 95-3727, 1996 WL 366283, at *1 (6th Cir. June 28, 1996) (finding a contradiction when plaintiff testified in his deposition that he did not know why he tripped, but then later stated in his affidavit that "the site of his accident was filled with debris, vegetation, and loose pieces of ballast, and that . . . one of those items caused [his] injuries").

Moreover, the affiants' recollections contradict their deposition testimony in several other significant respects. For example, Coco and Loadman both now claim no one at

Banco ever told them that anyone higher up than Wojtowicz or Putnam had to approve their alleged assurances that they would "get it done." (Doc. No. 45-4 at 1477; Doc. No. 45-5 at 1494.) But, at Coco's deposition, he testified he understood Wojtowicz did not have authority to approve credit for the bank and that he communicated this fact to Loadman. (Doc. No. 39 at 1215.) Additionally, Loadman testified that he had "no idea" who was ultimately responsible for approving the SBA loans or whether it was a particular individual or a committee. (Doc. No. 37 at 743-44.) Further, although the affiants relate a promise to give Loadman the loans if he did not apply to another bank (Doc. No. 45-4 at 1478; Doc. No. 45-5 at 1495), Loadman never testified to such an alleged exclusivity promise during his depositions, despite direct questioning whether he had applied to other banks during the relevant period. On the contrary, during his deposition, he admitted he was "sure" he did apply to other banks. (Doc. No. 37 at 764-65, 769.) The affiants also claim for the first time that Banco required Loadman to quit his job and move from Georgia to North Carolina and required Allred Metal to phase out certain customers. (Doc. No. 45-4 at 1483-84; Doc. No. 45-5 at 1500-01.) Yet, Loadman testified during his deposition that he worked in Georgia from 1998 until 2010 (Doc. No. 37 at 699), and Coco testified it was Allred Metal who chose to "divest themselves of the least profitable clientele," to protect "the bottom line." (Doc. No. 39 at 1235.)

Plaintiffs have wholly failed to explain these contradictions. Likewise, they have failed to demonstrate that their latest revelations are due to previously unavailable evidence, that their previous deposition testimony was the product of confusion, or that there is independent evidence in the record to bolster these newly recalled facts. The law is clear that "a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made,

10

which contradicts her earlier deposition testimony." *Reid*, 790 F.2d at 460; *see also Aerel, S.R.L.*, 448 F.3d at 907. "[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Reid*, 790 F.2d at 460. To the extent Loadman's and Coco's affidavits contradict their previous statements made under oath (i.e., their deposition testimony), the Court finds these affidavits to be sham testimony that may justly be disregarded. *Aerel, S.R.L.*, 448 F.3d at 906; *Shahzade v. Gregory*, 930 F. Supp. 673, 676 (D. Mass. 1996); *Hankins v. Title Max of Ala., Inc.*, No. Civ. A. 05 AR 00905 S, 2006 WL 4393576, at *9 (N.D. Ala. Sept. 26, 2006).

### C. Hearsay

Next, many of the affiants' statements rely on hearsay (and even double and triple hearsay) not readily subject to any exception or exclusion. Courts cannot consider inadmissible hearsay in an affidavit when ruling on a summary judgment motion. *N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997). Hearsay is a statement "the declarant does not make while testifying at the current trial or hearing[,] and . . . [that] a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). "'[T]he burden of proving that the statement fits squarely within a hearsay exception' rests with the proponent of the hearsay exception," here, plaintiffs. *United States v. Arnold*, 486 F.3d 177, 206 (6th Cir. 2007) (quoting *United States v. Kendrick*, 853 F.2d 492, 496 n.3 (6th Cir. 1988)). As well, the proponent bears the burden of demonstrating each element of a given exception or exclusion. *United States v. Day*, 789 F.2d 1217, 1221 (6th Cir. 1986). Further, in the instance of multiple layers of hearsay (i.e., when one person's out-of-court statement is offered to prove an out-of-

court statement made by another, which is in turn offered for its truth), the proponent must demonstrate that each layer is admissible. *See* Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule.") "'Affidavits composed of hearsay and opinion evidence do not satisfy Rule 56(e) and must be disregarded.'" *R.K. ex rel. J.K. v. Bd. of Educ. of Scott Cnty., Ky.*, No. 11-5700, 2012 WL 3525403, at *6 (6th Cir. Aug. 16, 2012) (quoting *State Mut. Life Assur. Co. of Am. v. Deer Creek Park*, 612 F.2d 259, 264 (6th Cir. 1979)).

Banco's first hearsay objection is to Loadman's and Coco's testimony to identical quoted language from conversations that purportedly occurred in 2007 and 2008. In paragraph 3 of each affidavit, the affiants provide the exact same quote, in word-for-word fashion, from a conversation that they allegedly had with Wojtowicz in 2007. (Doc. No. 45-4 at 1472-73; Doc. No. 45-5 at 1490-91.) In paragraph 10 of each affidavit, they provide another exact word-for-word quote from a conversation they allegedly had with Wojtowicz and Putnam in or around April 2008. (Doc. No. 45-4 at 1475-76; Doc. No. 45-5 at 1493-94.) Banco raises numerous other hearsay objections to out-of-court statements that Coco and Loadman testify were made by each other, Banco or "the bank," Wojtowicz, Putnam, Rozek, Banco employees Betty Kozak ("Kozak") and/or Brenda Stolte ("Stolte"), Banco employee Diane Gallion ("Gallion"), CDC representative Mark Ansell ("Ansell"), Allred Metal, Restauri, and Burkart. (Doc. No. 53 at 1651-58; Doc. No. 52 at 1635-41.)

In response, plaintiffs contend the statements made by Banco's employees, Wojtowicz, Putnam, Kozak, Stolte, and Gallion, *supra*, are excluded from hearsay under Fed. R.

Evid. 801(d)(2) "because they are statements and conduct by a party now offered against that party." (Doc. No. 58 at 1685.)

Fed. R. Evid. 801(d)(2) provides, in relevant part, that an opposing party's statement is not hearsay when it meets the following conditions:

The statement is offered against an opposing party and:

**(A)** was made by the party in an individual or representative capacity;

**(B)** is one the party manifested that it adopted or believed to be true;

**(C)** was made by a person whom the party authorized to make a statement on the subject; [or]

**(D)** was made by the party's agent or employee on a matter within the scope of that relationship and while it existed[.]

Fed. R. Evid. 801(d)(2). Further, the rule provides, "The statement must be considered but does not by *itself* establish the declarant's authority under (C); [or] the existence or scope of the relationship under (D)[.]" *Id*. (emphasis added).

Here, plaintiffs do not identify which part of the rule they rely upon, nor do plaintiffs present the Court with any evidence establishing that the content of the statements was within the scope of the declarants' employment relationships with Banco. *See Mitroff v. Xomox Corp.*, 797 F.2d 271, 276 (6th Cir. 1986) ("A statement of an agent or employee may be admissible against the principal . . . if within the scope of his agency or employment, but a proper foundation must be made for such a statement to show it was within the scope of his agency or employment.") (citation omitted). For example, plaintiffs make no effort to show that the approval of Loadman's loans, regardless of unsatisfied environmental conditions, fell within Wojtowicz's or Putnam's scope of employment or that a "Senior SBA Underwriter" had any

13

involvement in the valuation of Allred Metal's business. *See Hill v. Spiegel, Inc.*, 708 F.2d 233, 237 (6th Cir. 1983) ("But it is necessary, we repeat, to show, to support admissibility, that the content of the declarant's statement concerned a matter within the scope of his agency.") (hearsay proponent presented no evidence that declarants were involved in decision to discharge plaintiff, thus there was no basis for finding that the declarants' statements concerned matters within the scope of their employment). Moreover, in several instances, the declarant is unknown and is simply identified by the affiants as "Banco" or the "bank." *See Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1002 (3d Cir. 1988) (hearsay proponent failed to meet burden under Rule 801(d)(2)(D) by failing to identify the unknown "they" declarant such that the court could determine that statement fell within the scope of the declarant's employment).

Consequently, for these reasons, in response to defendant's explicit objections, plaintiffs have not carried their burden of proving that the statements of Banco's employees or purported agents, *supra*, fall within the scope of their employment relationships with Banco. *See Giles v. Univ. of Toledo*, 241 F.R.D. 466, 472 (N.D. Ohio 2007) (proponent failed to show declarant made statement as party's agent within scope of agency); *Rainworks Ltd. v. Mill-Rose Co.*, 622 F. Supp. 2d 650, 660 (N.D. Ohio 2009) (citing *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1254 (Fed. Cir. 2000) (statements made by party's agent not admissible where proponent failed to offer evidence statements were made during scope of agency relationship)). Accordingly, these statements are not competent summary judgment evidence. *See Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995) ("[e]vidence on summary judgment may be considered to the extent not based on hearsay").

Regarding Banco's other hearsay objections, plaintiffs argue that the statements cited above are also "being offered to show motivation for subsequent action . . . and are not offered to show the truth of the matters asserted . . . ." (Doc. No. 58 at 1687.) However, plaintiffs fail to offer any analysis as to how any of the statements identified by Banco motivated Loadman's subsequent conduct, let alone which statements are not being offered for the truth versus those of Banco's employees purportedly excluded under Fed. R. Evid. 801(d)(2). Instead, plaintiffs assert generally that "there is a recurring theme [in the affidavits] that [Loadman] thought everything was moving along, because [he] believed . . ." these statements. (*Id.*)

To the extent the affiants testify to their own state of mind or their own subjective beliefs that certain events occurred, plaintiffs are correct that they may do so without violating the hearsay rule. *Bailey v. USF Holland, Inc.*, 444 F. Supp. 2d 831, 848 (M.D. Tenn. 2006) (citing *Picha v. City of Parma*, 958 F.2d 372 (Table), 1992 WL 57419, at *3 (6th Cir. Mar. 25, 1996)). Further, "[a] statement offered as evidence of the bare fact that it was said, rather than for its truth, is not hearsay." *United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2009) (citation omitted). However, the affiants cannot testify to the state of mind of others or to the truth of the incidents detailed by the declarants and, therefore, the Court will not consider the identified statements for those purposes because plaintiff has not carried their burden of demonstrating the applicability of any hearsay exception or exclusion. *Bailey*, 444 F. Supp. 2d at 848.

## D.  Documents Not in Evidence

Defendants also ask the Court to exclude those portions of the affidavits that rely on and discuss documents not in the record, including a loan offer letter for Community South

Bank. In response, plaintiffs argue such evidence does not need to be attached to the affidavits and, in any event, Banco received a copy of the Community South commitment letter identified in the affidavits. Plaintiffs admit, however, they do not have copies of, nor did they produce, the other documents to which the affiants refer, including Loadman's lease, employment agreement, and resignation letter. (Doc. No. 58 at 1688.)

Former Rule 56(e) contained an unequivocal direction that documents presented in connection with a summary judgment motion must be authenticated, "If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit." Fed. R. Civ. P. 56(e)(1) (2009 version). Relying on this language, the Sixth Circuit routinely held that unauthenticated documents could not be used to support a motion for summary judgment. *See, e.g.*, *Moore v. Holbrook*, 2 F.3d 697, 698–99 (6th Cir. 1993). As recently as 2009, the Sixth Circuit stated that unauthenticated documents do not meet the requirements of Rule 56(e) and must be disregarded. *Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009).

Plaintiffs are correct, however, that since the 2010 amendments to the Federal Rules of Civil Procedure, they are no longer required to attach to the affidavits copies of papers referred to therein. *See* Fed. R. Civ. P. 56 advisory committee's note ("The requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration is omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record."). Rule 56(c)(1)(A), however, provides:

> A party asserting that a fact cannot be or is genuinely disputed must support the
> assertion by . . . citing to particular parts of materials in the record, including

> depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]

Fed. R. Civ. P. 56(c)(1)(A). Further, the committee's notes explain, "Materials that are not yet in the record—including materials referred to in an affidavit or declaration—must be placed in the record." Fed. R. Civ. P. 56 advisory committee's note 2010. "[T]he amendment replaces a clear, bright-line rule ('all documents must be authenticated') with a multi-step process by which a proponent may submit evidence, subject to objection by the opponent and an opportunity for the proponent to either authenticate the document or propose a method to doing so at trial." *Foreword Magazine, Inc. v. OverDrive, Inc.*, No. 1:10-CV-1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011).

Here, none of the previously specified papers relied upon by the affiants appear in the record. Thus, the existence of those documents and the affiant's discussion of them is wholly unsupported by the record. Further, plaintiffs have made no attempt to demonstrate that the affiants' statements regarding those documents would be admissible in evidence and, therefore, the Court will not consider this evidence for purposes of summary judgment. Fed. R. Civ. P. 56(c)(1)(A) and (c)(4). *See, e.g.*, *Jones v. Corr. Corp. of Am.*, No. CV 10-2769-PHX-RCB, 2013 WL 56119, at *18 (D. Ariz. Jan. 3, 2013) (defendant failed to present admissible evidence to show that the treatment for plaintiff's head injury and mental health needs was not deliberately indifferent where physician's affidavits relied on medical records not placed in the record and not attached to their affidavits).

### E.  Inadmissible Lay Opinion Testimony

Finally, defendant argues the Court should disregard paragraph 36 of Coco's affidavit and his entire supplemental affidavit because, in addition to including hearsay, double hearsay, and speculation, Coco (who was not identified as an expert witness) offers unqualified lay opinion regarding the prospective value of the Allred Metal business based on technical, specialized knowledge that is inadmissible under Fed. R. Evid. 701. Plaintiffs argue in response that Coco is not testifying as an expert, but merely as a fact-witness accountant and may testify in this capacity to Allred Metal's business value based upon his previous professional experience as a former bank president, a former mortgage broker, a certified public accountant, a business and financial advisor, and a president and chief executive officer of a retail store.

A lay witness—i.e., one who "is not testifying as an expert"—may testify in the form of an opinion so long as the opinion is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Subsection (c) was added to this rule in 2000 in order to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 370 F.3d 519, 525 (6th Cir. 2004) (quoting Fed. R. Evid. 701, Advisory Committee Notes for the 2000 Amendments).[8]

---

[8] Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

At paragraph 36 of his affidavit, Coco testifies as follows:

> At the same time, Banco's Betty Kozak produces its own due diligence analysis, using independent, outside, professional appraisals ordered by the bank, that show the equity to the borrower in the business (real estate, equipment, inventory) on the day of closing will be $4 million using a fair market value method, and $10 million using a standard capitalization method. We discuss it and she tells me that the standard capitalization method is often called the "going business" valuation. I already know this from my days in banking and my current work as a business consultant. Betty Kozak, Banco's Senior SBA Underwriter, tells me that the bank and SBA both require the dual analysis. She tells me that she prepared it and that she is constantly reviewing and confirming it. The last time I talked with her about it was in July, well after Banco received the Phase II report. She tells me that, after subtracting the approximately $6 million in requested Banco Loans, the analysis shows equity of $4 million using the fair-market value approach, and $10 million using the capitalization approach. I talk with her again about this just a few days before August 11, 2009 and she confirms those calculation methods and equity values.

Doc. No. 45-4 at 1484-85.

Subsequently, plaintiffs filed a motion for leave to correct the exhibits attached to Coco's affidavit and to file a supplemental affidavit. (Doc. No. 46.) The supplemental affidavit seeks to authenticate, clarify, and explain the exhibits attached to Coco's earlier affidavit, originally attributed to Kozak, by acknowledging that some of those exhibit pages were actually *Coco's summary* of Kozak's credit analysis memo, and that Wojtowicz may have communicated some of Kozak's statements to him. (Doc. No. 46-4.) The supplemental affidavit also explains that the exhibits thereto summarize information obtained from appraisals and financial statements performed by third parties, tax returns, internet searches, and information provided by

---

**(b)** the testimony is based on sufficient facts or data;
**(c)** the testimony is the product of reliable principles and methods; and
**(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Allred Metal, Loadman, and Banco. (*Id.*) None of the documents referenced within the exhibits to Coco's affidavit and supplemental affidavit appear in the record.

In *JGR, Inc.*, *supra*, the Sixth Circuit held that a witness, who was a certified public accountant and lawyer, could not offer a lay opinion as to lost profits and business value of a retailer where he had no first-hand, personal knowledge of the retailer's operations and instead relied upon information from the retailer that he had not independently verified. *Id.* at 526. In so holding, the Sixth Circuit relied upon the Fifth Circuit's ruling in *DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 685-87 (5th Cir. 2003). In *DIJO, Inc.*, the Fifth Circuit held that a financial consultant could not offer lay witness, opinion testimony regarding a company's lost profits, despite his role as "primary contact" at a commercial lender engaged in business with the company, where he had not served as an owner or officer of the company and where his opinion was not based on his independent knowledge or observations, but upon information received from the company's founder. *Id.* at 685-86. In considering whether the lower court properly permitted the witness to give lay opinion testimony concerning lost profits, the Fifth Circuit reasoned:

> It is telling that DIJO responds . . . not with evidence of [the witness]'s involvement with [the plaintiff] or the Project, but only by emphasizing [his] substantial business experience. . . . Such generic industry experience does not pass Rule 701 scrutiny. [The plaintiff] never attempted to qualify [the witness] as an expert; and a lay witness who was never employed by or directly involved in a business is unlikely to have the type of first-hand knowledge necessary to provide reliable forecasts of future lost profits. The further removed a layman is from a company's day-to-day operations, the less likely it is that his opinion testimony will be admissible under Rule 701.

*Id.* at 686 (footnote omitted).

20

Similarly, here, like the witnesses in *JGR, Inc.* and *DIJO, Inc.*, Coco has never been an owner, officer, or director of Allred Metal. Additionally, the information upon which he relies in arriving at his calculations of the value of the Allred Metal business to Loadman came from information he allegedly obtained from Allred Metal, Banco, and other third parties. Coco gives no indication he independently verified any of that information. Therefore, Coco has no basis upon which to offer his lay opinion testimony about Loadman's loss of business value and, accordingly, his testimony thereto must be disregarded. *See JGR, Inc.*, *supra*; *DIJO, Inc.*, *supra.*[9]

## IV.  CONCLUSION

All of the foregoing substantial and pervasive defects in the Loadman affidavit and Coco affidavit and supplemental affidavit are so intertwined with other information that the Court concludes that the entirety of the affidavits may be disregarded on summary judgment.[10] Nevertheless, should a reviewing court disagree with this conclusion, in an effort to rule on defendant's specific objections and to extricate the admissible evidence from the inadmissible evidence in the Loadman and Coco affidavits, the Court provides specific rulings, as follows:[11]

---

[9] Plaintiffs' reliance on *Ryan Dev. Co., L.C. v. Ind. Lumbermens Mut. Ins. Co.*, No. 09-1264-EFM, 2011 WL 5080309 (D. Kan. Oct. 25, 2011) is misplaced. First, this Court is not bound by an unpublished district court opinion from Kansas. Further, unlike the accountant witness in *Ryan*, Coco has no "personal knowledge of the business," and has not "performed straightforward calculations." *Ryan*, 2011 WL 5080309 at *5. Instead, Coco's testimony is admittedly based on his self-proclaimed professional expertise and on the technical analysis and conclusions of other professionals only admissible under Rule 702, not Rule 701. *See id.* (discussing *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207 (10th Cir. 2011)).

[10] Indeed, the Court notes that although the Court must use "a scalpel" rather than a "butcher knife" to carve out only those portions of the affidavits that do not satisfy the requirements of Rule 56(c), because the admissible content of the affidavits is so intertwined with the inadmissible content, the end result in this case is the same.

[11] On August 3, 2012, plaintiffs filed a motion for leave to file a sur-reply in opposition to Banco's motion for summary judgment. (Doc. No. 55.) On September 11, 2012, the Court denied that motion. Despite that ruling, plaintiffs have dedicated several pages of their opposition briefs to the motions to strike to arguing the legal merits of plaintiffs' claims. The Court previously indicated that it would consider plaintiffs' opposition to the motions to strike only to the extent it addressed the admissibility of the affidavits and, accordingly, the Court will disregard plaintiffs' arguments regarding summary judgment as an improper sur-reply.

| Affidavit of Eric J. Loadman | | |
|---|---|---|
| Paragraph | Ruling | Explanation |
| 1 | No objection | |
| 2 | Objection sustained | |
| 3 | Objection sustained in part | The Court will disregard all but the first sentence. |
| 4 | Objection sustained | |
| 5 | Objection sustained in part | The Court will disregard the second sentence after "I call Frank Coco" and the third sentence after "So I give the bank the approval to go ahead with it." |
| 6 | Objection sustained | |
| 7 | Objection sustained in part | The Court will disregard all of the first sentence except "there is still no commitment letter from Banco"; the entire fourth sentence, and all of the fifth sentence except "I . . . send . . . a $15,000 non-refundable processing fee." |
| 8 | Objection sustained | |
| 9 | Objection sustained in part | The Court will disregard sentences four through six. |
| 10 | Objection sustained | |
| 11 | No objection | |
| 12 | No objection | |
| 13 | No objection | |
| 14 | Objection sustained | |
| 15 | No objection | |
| 15[12] | Objection sustained | |
| 16 | Objection sustained in part | The Court will disregard the entire paragraph except " . . . I . . . send . . . to Banco . . . the $17,000 refundable processing fee (which has never been returned to me)." |
| 17 | Objection sustained | |
| 18 | Objection sustained | |
| 19 | Objection sustained | |
| 20 | No objection | |
| 21 | Objection sustained | |
| 22 | Objection sustained | |
| 23 | Objection sustained | |
| 24 | Objection sustained | |
| 25 | Objection sustained | |
| 26 | Objection sustained | |
| 27 | Objection sustained in part | The Court will disregard the entire paragraph except the second sentence. |
| 28 | Objection sustained | |
| 29 | Objection sustained | |
| 30 | No objection | |
| 30 | Objection sustained | |

---

[12] The affidavit contains two paragraphs numbered 15. All paragraph numbering is presented as written.

| 31 | Objection sustained in part | The Court will disregard the first sentence after "I ask the Allreds and my investor, Jim Sprayberry, to be patient" and the third sentence after "I keep asking Frank Coco to try to get an update on the PLP number." |
| 32 | Objection sustained | |
| 33 | Objection sustained | |
| 34 | Objection sustained in part | The Court will disregard the entire paragraph except "I keep calling Banco"; the second sentence; and the penultimate sentence, which ends in "PLP number or any missing documents." |
| 35 | Objection sustained in part | |
| 36 | Objection sustained | |
| 37 | Objection sustained | |
| 38 | Objection sustained | |
| 39 | Objection sustained | |
| 40 | Objection sustained in part | The Court will disregard the entire paragraph except "Frank Coco and I go back to Joseph Wojtowicz." |
| 41 | Objection sustained | |
| 42 | Objection sustained in part | The Court will disregard the entire paragraph except the last two sentences. |
| 43 | No objection | |

| Affidavit and Supplemental Affidavit of Frank Coco | | |
|---|---|---|
| Paragraph | Ruling | Explanation |
| 1 | Objection sustained | |
| 2 | Objection sustained | For clarification, the Court interprets "the last part of the first sentence" to refer to the part beginning with "I tells [sic] him . . . ." |
| 3 | Objection sustained | |
| 4 | Objection sustained | For clarification, the Court interprets "the first part of the third sentence" to refer to "I nudge and cajole Joseph Wojtowicz." |
| 5 | Objection sustained | |
| 6 | Objection sustained | |
| 7 | Objection sustained in part | The Court will disregard the entire paragraph except "there is still no commitment letter from Banco." |
| 8 | No objection | |
| 9 | Objection sustained in part | The Court will disregard the third, fourth, and sixth sentences. |
| 10 | Objection sustained | |
| 11 | Objection sustained | |
| 12 | Objection sustained | |
| 13 | No objection | |
| 14 | Objection sustained | |
| 15 | Objection sustained | |
| 15[13] | Objection sustained | |
| 16 | Objection sustained | |
| 17 | Objection sustained | |
| 18 | Objection sustained | |
| 19 | Objection sustained | |
| 20 | Objection sustained | |
| 21 | Objection sustained | |
| 22 | No objection | |
| 23 | Objection sustained in part | The Court will disregard the entire paragraph except "Mr. Restauri and I talk on the telephone." |
| 24 | Objection sustained | |
| 25 | Objection sustained in part | The Court will disregard the entire paragraph except "Joseph Wojtowicz calls me." |
| 26 | Objection sustained | |
| 27 | Objection sustained in part | The Court will disregard the entire paragraph except "I never do meet . . . Ralph Ansell" and the second sentence. |
| 28 | Objection sustained | |
| 29 | No objection | |
| 30 | No objection | |
| 30 | Objection sustained | |

---

[13] The Court notes that the Coco affidavit has the same duplicative paragraph numbers as the Loadman affidavit.

| 31 | Objection sustained in part | The Court will disregard the entire paragraph except the second sentence and the portion of the third sentence through "every day or so for updates." |
|---|---|---|
| 32 | Objection sustained | |
| 33 | Objection sustained | |
| 34 | Objection sustained in part | The Court will disregard the entire paragraph except "I keep calling Banco"; the second sentence; "Banco never asked me . . . if the remediation could materially impact the business."; the antepenultimate sentence, which ends in "PLP number or any missing documents"; and the last sentence. |
| 35 | Objection sustained | |
| 36 | Objection sustained | |
| 37 | Objection sustained in part | The Court will disregard the entire paragraph except "In late June or early July, Vincent Restauri calls me" and "About two weeks later, he calls." |
| 38 | Objection sustained | |
| 39 | Objection sustained in part | The Court will disregard the entire paragraph except "Over the next few days, Eric Loadman reports to me" and the third sentence. |
| 40 | Objection sustained in part | The Court will disregard the entire paragraph except "Eric Loadman and I go back to Joseph Wojtowicz." |
| 41 | Objection sustained | |
| 42 | Objection sustained | |
| Supp. Affidavit | Objection sustained in part | The Court will disregard paragraph 1(A); the first sentence of paragraph 1(B); paragraph 2(A); the portion of paragraph 2(B) beginning with "using numbers taken from"; paragraphs 3, 5, and 6; and the portion of paragraph 7 beginning with "who in turn notified." |

**IT IS SO ORDERED**.

Dated: March 19, 2013

_____

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

25